NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-4283
_____

ALIYA DAVIS,

Appellant

v.

DAVIS AUTO, INC.
TRI-STATE LENDING, LLC


_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:10-cv-03105)
District Judge:  Hon. J. Curtis Joyner

_____


Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 24, 2012

BEFORE:  McKEE, *Chief Judge*, and JORDAN, VANASKIE, *Circuit Judges*.

(Opinion Filed: January 11, 2013)

Ari R. Karpf, Esquire
Adam C. Lease, Esquire
Karpf, Karpf & Cerrutti, P.C.
3331 Street Road
Two Greenwood Square
Suite 128
Bensalem, PA 19020
        *Counsel for Appellant*

James M. Penny, Jr., Esquire
Terri Gillespie, Esquire
Obermayer Rebmann Maxwell
& Hippel LLP
One Penn Center, 19th Floor
Philadelphia, PA 19103
        *Counsel for Appellee*

————————

OPINION

————————

McKee, *Chief Judge*.

Aliya Davis ("Davis") appeals the District Court's grant of summary judgment in the defendants' favor in her suit against Davis Auto, Inc. ("Davis Auto") and Tri-State Lending, LLC ("Tri-State"), in which Davis alleged her termination from her job at Davis Auto was motivated by unlawful retaliation in violation of the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12203(a). For the following reasons, we will affirm the District Court's judgment.

I.

Since we write primarily for the parties, it is unnecessary to set forth the factual or procedural history of this case except to the extent it is helpful to our discussion.

Davis Auto and Tri-State are family-run businesses located in Pennsylvania. During the relevant time period, Davis Auto owned and operated two used automobile dealerships in Philadelphia and Levittown. Joseph M. Davis, Jr. ("Davis, Jr.") and Joseph M. Davis, Sr. ("Davis, Sr.") served as Davis Auto's President and Vice-President, respectively. Father and son also served as the sole members of Tri-State, a separate company that functioned as Davis Auto's controller. William Bach ("Bach"), Davis,

2

Sr."s son-in-law and Davis, Jr."s brother-in-law, managed Tri-State"s daily operations. J.A. 52-53, 182.

Davis, who is not related to the defendants, worked at Davis Auto and Tri-State in varied clerical capacities from June 2006 through October 2008. During this time, Davis suffered from several ailments including anxiety, asthma, and a thyroid disorder. J.A. 436-38. In a meeting with her employers on July 7, 2008, Davis informed the defendants that she might have cancer and added that she would likely need time off work to take care of her medical hardships and treatments. J.A. 380, 476.

Following the July 7, 2008 meeting, Davis worked for the defendants for approximately three months. Davis"s employment came to an end on October 15, 2008, when Davis, Jr. notified her that she was being laid off. J.A. 379.

After exhausting administrative remedies, Davis filed suit alleging unlawful discrimination and retaliation in violation of the ADA and the Pennsylvania Human Relations Act ("PHRA"). Thereafter, the District Court granted the defendants" request for summary judgment. *See Davis v. Davis Auto*, 2011 WL 5902220 (E.D. Pa. Nov. 22, 2011). The District Court held that Davis could not establish a prima facie claim because she could not show that she was "substantially limited" in a major life activity nor demonstrate that her employers perceived her as disabled. *Id*. at *6-9. The District Court also concluded that Davis could not make out a prima facie claim of unlawful retaliation because she could not establish a causal connection between her alleged protected

3

activity and the defendants" decision to terminate her employment. This appeal followed.[1]

## II.

Our review of a district court's grant of summary judgment is plenary. *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006). "'When reviewing a district court's summary judgment decision in an ADA case, we . . . apply[] the same standard as the district court.'" *Hip Heightened Indep. & Prog., Inc. v. Port Auth. of N.Y. and N.J.*, 693 F.3d 345, 351 (3d Cir. 2012) (quoting *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 184 (3d Cir. 2010)). Summary judgment is proper only where no genuine issue as to any material fact exists such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

In order to establish a prima facie case of retaliation under the ADA, Davis must show by a preponderance of the evidence that (1) she undertook some protected activity, (2) that she suffered an adverse employment action, and (3) that there exists a causal connection between the two. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997). If Davis establishes a prima facie claim, "'the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action.'" *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003) (quoting *Krouse*, 126 F.3d at 500). If the employer successfully meets this burden of production, Davis has to show that the otherwise legitimate reasons advanced by her employer are actually a pretext to mask a retaliatory animus. *See Krouse*, 126 F.3d at 501.

---

[1] Davis withdrew her PHRA claim against the defendants before the District Court

4

The District Court assumed that Davis engaged in protected conduct when she informed her employers about the possibility that she had cancer and requested an accommodation in the form of an undetermined amount of time off from work in the July 7, 2008 meeting. Because the parties do not contest this issue, we will afford Davis the benefit of the same presumption. It is also clear that Davis was subject to an adverse employment action when the defendants terminated her on October 15, 2008. *See Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001) ("[T]ermination clearly fulfills the second prong of the prima facie case for a retaliation claim.").

The parties expend a substantial portion of their briefs discussing whether or not the District Court correctly concluded that Davis could not establish a prima facie causal connection between her asserted protected activity and the defendants" decision to terminate her employment. However, we need not address that issue because it is clear on this record that Davis cannot meet her ultimate burden of showing that the defendants" stated legitimate reason for her termination masked retaliatory motives.[2]

---

[2] Davis"s final argument attacks the defendants" proffered legitimate, non-retaliatory reason for her termination. Davis argues that the defendants should be estopped from claiming that she was laid off due to economic or performance-related issues because in a deposition submitted to Pennsylvania"s Department of Labor, Bach stated that the reason for Davis"s separation from employment was "lack of work." Inconsistent statements, however, "are not sanctionable unless a litigant has taken one or both positions „in bad faith – i.e., with intent to play fast and loose with the court."" *Montrose Med. Grp. Participating Savs. Plan v. Bulger*, 243 F.3d 773, 781-82 (3d Cir. 2001) (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996)). We do not find the requisite bad faith element here.

Specifically, the defendants assert that declining business and corresponding financial difficulties led them to decide to reduce personnel. Consistent with this business decision, the defendants claim that Davis was selected for termination due to a documented history of shortcomings in the areas of attendance and performance. J.A. 900-02.

Davis underscores alleged inconsistencies in the witnesses" testimony, such as Bach"s failure to recall whether it was Davis, Jr. or Davis, Sr. who first proposed her termination. However, even reading any such inconsistencies in the light most favorable to Davis, other compelling evidence in the record undercuts any charge of pretext.[3] Most importantly, Davis discounts the undisputed fact that, once informed of the possibility that Davis could have cancer on July 7, 2008, the defendants" immediate response was to suggest that she join the companies" medical insurance plan and to offer her a $3.00 hourly raise. J.A. 186. Davis then continued to work for the defendants for approximately fourteen weeks before being laid off in October 2008 – a period during which she concedes the defendants underwent financial difficulties that led them to reduce overall costs. J.A. 187. Davis"s attempt to claim retaliatory motives after the defendants tried to support her by offering her a medical insurance plan to cover any cancer treatments and an hourly raise is patently frivolous.

---

[3] Defendants argue that Davis"s claim of pretext was waived because it was not timely asserted in the District Court. However, since the record does not raise a genuine issue of fact regarding a pretextual motive, we reject that argument on its merits.

Moreover, the defendants" cost reduction efforts (and the effect these had on personnel) are well-documented in the record.[4]  Based on these facts, we do not believe a reasonable juror could find that the defendants" decision to terminate Davis was motivated in whole or in part by her request for time off to tend to her ailments.[5]

III.

In light of the above, we will affirm the District Court"s November 22, 2011 order.

COSTS TAXED AGAINST APPELLANT.

---

[4] For example, at least 8 of the 21 employees in the defendants" combined 2008 payroll list were laid off between September and December of that year.  J.A. 81-86.  In December 2008, the defendants also shuttered Davis Auto"s location in Levittown, Pennsylvania.  J.A. 52, 182.

[5] Contrary to Davis"s argument, the fact that the defendants reassigned Davis"s job functions to an employee upon her departure does not, by itself, suggest pretext, nor does it necessarily contradict the defendants" claim that her termination was the result of the companies" financial difficulty.  This court has recognized that an employer"s decision to reassign work duties to a higher-paid incumbent employee does not betray a causal link between a plaintiff"s protected activity and her termination unless "other evidence" renders the employer"s asserted legitimate motive "inconsistent or incongruous." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 234 (3d Cir. 2007).  Here, we do not find other such evidence.